**SO ORDERED.**

**SIGNED this 25 day of May, 2012.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **ANDERSON HOMES, INC., and** | **09-02062-8-SWH** |
| **VANGUARD HOMES, INC.,** | **09-02071-8-SWH** |
| DEBTORS | |

**RICHARD D. SPARKMAN, Chapter 7 Trustee for
Anderson Homes, Inc. and Vanguard Homes, Inc.,**

    Plaintiff,     **ADVERSARY PROCEEDING NO.
                                        11-213-8-SWH-AP**

    v.

**AMERICAN RESIDENTIAL SERVICES, LLC,**

    Defendant.

### ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

The matter before the court is the First Motion for Summary Judgment filed by creditor and defendant American Residential Services, LLC ("American") in this preferential transfer action initiated by the chapter 7 trustee. American contends that the trustee cannot meet his statutory burden in his effort to avoid certain transfers between the debtors (collectively, "Anderson Homes")

and American during the 90-day period preceding March 16, 2009 (the date on which Anderson Homes filed a petition under chapter 11), and that American is entitled to judgment as a matter of law. The trustee filed a memorandum in opposition to American's motion and also filed a Cross-Motion for Partial Summary Judgment as to its preference claim under 11 U.S.C. § 547(b). A hearing was held in Raleigh, North Carolina, on April 25, 2012, after which both parties filed additional memoranda. The matter is ripe for disposition.

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable in this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, the moving party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (construing Fed. R. Civ. P. 56(c)). The court views the facts and draws inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## UNCONTROVERTED FACTS AND STATEMENT OF THE ISSUES

The parties are in agreement that Anderson Homes made various payments to American during the 90-day preference period (the alleged "preferential transfers"), which together totaled $186,419.35.[1] The payments were for labor and materials provided by American in connection with

---

[1] One of the payments was made by a check that was issued outside the 90-day preference period, but cleared the debtor's account inside the preference period. It is established that the date on which the check is honored is determinative in the preference context, *Barnhill v. Johnson*, 503 U.S. 393 (1992), which American implicitly recognizes when it concedes that the trustee has satisfied § 547(b)(4).

the construction of homes by Anderson Homes pursuant to a series of contracts entered into by the parties over an extended period of time. For purposes of this motion, American has conceded that as to these payments, the trustee has met his burden of proof with respect to the first four of the five requirements of 11 U.S.C. § 547(b). As American accurately recites, the statute requires the trustee to establish

> that the Alleged Preferential Transfers were (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made within 90 days of the filing of the petition; and (5) that enabled American Residential to receive more than it would have received if the Case were under Chapter 7, the transfer had not been made, and American Residential had received the amount to which it was entitled under the hypothetical Chapter 7.

Def.'s First Mot. for Summ. J. at ¶ 5.

American contends that the trustee cannot discharge his burden regarding the fifth and last requirement. Specifically, American contends that if the debtor had not made the alleged preferential transfers, American "could and would have filed appropriate claims of lien on the Subject Lots, and been paid in full in the hypothetical Chapter 7." *Id.* at ¶ 7. The crux of American's argument is that its *right* to file the liens under Chapter 44A of the North Carolina General Statutes, notwithstanding the fact that it did not act on that entitlement, establishes as a matter of law that the payments to American, which it accepted essentially in lieu of filing liens, are not avoidable. Additionally, American maintains that in order for the trustee to discharge his burden as to the fifth element of the preference cause of action, he must show that had American filed a lien on each property, it would not have been paid in full in a chapter 7 liquidation; *i.e.*, that the proceeds of the sale of each property securing its respective "would have been filed" liens did not or would not have been sufficient to pay off all the liens on that property.

3

In response, the trustee argues that American has provided "no supporting materials for its contention that it would have been paid in full in a Chapter 7 bankruptcy if it had filed lien claims with respect to the debts at issue," and also that "inchoate lien rights are insufficient to establish a secured claim for purposes of evaluating § 547(b)(5) as a matter of law." Pl.'s Mem. of Law in Supp. of Pl.'s Resp. To Def.'s First Mot. for Summ. J. ("Pl.'s First Mem.") at pp. 5-6. Moreover, the trustee argues, the fact that the debtors were insolvent at the time the petition was filed, together with the fact that American's lien rights were not perfected, may be cited by the court as "tantamount to a holding that the trustee had proven the element contained in § 547(b)(5)." *Id.* (*quoting Precision Walls, Inc. v. Crampton*, 196 B.R. 299, 302 (E.D.N.C. 1996)).

The statute provides that the trustee bears the burden of proving all of the elements to be shown under § 547(b)(5), and American contends that the trustee failed to meet that burden in several respects. For the reasons that follow, however, and pursuant to solid precedent in this circuit, the court concludes that the trustee has satisfied the requirements of § 547(b)(5) and that the transfers are avoidable. The court will deny American's First Motion for Summary Judgment and allow the Motion for Partial Summary Judgment filed by the trustee.[2]

## DISCUSSION

Both American's motion for summary judgment and the trustee's cross-motion for partial summary judgment focus on the same question of law: Whether the existence of inchoate lien rights are sufficient, for purposes of evaluating transfers under § 547(b)(5), to establish a hypothetical secured claim which a creditor may assert to block the trustee's ability to prove that the creditor

---

[2] The trustee moved for summary judgment only as to the § 547(b) claims, and did not seek to test American's defenses under § 547(c). Accordingly, although the issues are closely related, the court does not address those defenses at this time.

4

received more than it would have in a hypothetical chapter 7 had the transfer not been made.[3] The court will assess this issue from competing angles: First, to determine whether the trustee has satisfied his burden of proof in establishing that American received more than it would have received if the Anderson Homes cases were originally filed under chapter 7, as contemplated by § 547(b)(5). Next, the court will consider American's twist on the argument, which is that its right (albeit unexercised) to file liens under Chapter 44A of the North Carolina General Statutes could and would have fully secured its claims, and should be sufficient to establish American as a secured creditor in the context of the hypothetical chapter 7 case envisioned by § 547(b)(5). Both of these analytical roads lead to the same destination: the result that American seeks, although its

---

[3] In its motion, American originally emphasized an evidentiary aspect to its inchoate lien argument, contending that in its interrogatories to the debtor, it sought information concerning the debtor's "understanding as to what obligations the Alleged Preferential Transfers would be applied," which properties were involved, and the records concerning the costs incurred and payments received as to each property. American sought that information "to determine if [the trustee] could show that the Discharged Properties sold at a loss because, obviously, if the Discharged Properties sold at a profit to Anderson Homes, [the trustee] can not meet its burden of proof, under 11 U.S.C. § 547(b)(5), with respect to Alleged Preferential Transfers made with respect to those properties." Def.'s First Mot. for Summ. J. at ¶ 9.

The trustee disagreed that a profitable sale would have had the significance American attributes to it. He maintains that the statute does not require and he therefore did not conduct the sort of financial analysis envisioned by American, so no documents responsive to American's request are in existence. In addition, the trustee argues, the bare fact of the debtor's insolvency at the time the transfers were made was sufficient unto itself to establish the voidability of the transfers in this case without reference to each individual property.

To the extent that it turns on discovery issues, the simple and obvious resolution of this matter is that documents which do not exist cannot be produced. The larger legal questions – the significance of American's asserted inchoate lien rights, and of the debtor's insolvency when the transfers were made – control the court's analysis, and are discussed below. The court's disposition of them makes it unnecessary to broaden the discussion to include discovery matters.

"hypothetically secured" argument is supported by a strong rationale and would be accepted in many other jurisdictions, is precluded by strong and consistent precedent within this circuit.

To satisfy his burden of establishing the voidability of the transfers, the trustee focuses on the numbers. "All that is necessary to satisfy Section 547(b)(5)," the trustee contends, "is to establish that unsecured claims would not [have] received 100% in a chapter 7 bankruptcy." Pl.'s First Mem. at 7. The trustee claims that the debtors' conceded insolvency at the time the petitions were filed establishes exactly that, as matter of law, and that the focus under § 547(b)(5) is on whether American would have received less than a 100% payout from those bankruptcy estates. *See United Rentals, Inc. v. Angell*, 592 F.3d 525, 531 (4th Cir. 2010).

The record establishes that liquidation of virtually all of the real and personal tangible property in the debtors' estates during the pendency of the chapter 11 case or after conversion to chapter 7 left the estate with approximately $312,889.46 in funds in the trustee's possession.[4] The total amount of unsecured claims exceeds the available funds by a significant margin, as the trustee's affidavit establishes:

> The total unsecured claims shown in the bankruptcy petition filed [by] Anderson Homes, Inc. is $2,959,782.92. The total unsecured claims shown in the bankruptcy petition filed by Vanguard Homes, Inc. is $1,722,200.46. I believe that the total amount of unsecured claims in each case is greater than these amounts due to deficiency claims of secured creditors.
>
> There is currently an aggregate amount of approximately $312,889.46 in funds in my possession as trustee in the Anderson Homes, Inc. and Vanguard Homes, Inc. bankruptcy cases.

---

[4] The trustee represents that all property has been liquidated in the Vanguard Homes, Inc. case, and that the only remaining asset to be liquidated in the Anderson Homes, Inc. case is a single lot that will, he estimates, sell at auction for approximately $20,000. Aff. of Richard D. Sparkman at ¶¶ 3-5.

6

> To the best of my knowledge, there are no secured claims or lien claims attached to the funds on hand, and they are completely unencumbered.
>
> The majority of the preference litigation has been settled or otherwise resolved. The total aggregate demand amount in the remaining preference actions is less than $900,000, and I expect to recover less than this amount given the strength of certain defendants' defenses under 11 U.S.C. § 547(c).

Aff. of Richard D. Sparkman at ¶¶ 7-10. The assets sold while the cases were proceeding under chapter 11 were liquidated "for equal or greater value than could have been obtained in a Chapter 7 liquidation," the trustee attested, but the ultimate result is that "the unsecured creditors in each bankruptcy case shall receive a dividend significantly less than 100%," and "the unsecured creditors in each bankruptcy case would have received a dividend significantly less than 100% had the case originally been filed under Chapter 7 of the Bankruptcy Code." *Id.* at ¶¶ 11-13.

Where the trustee has demonstrated that liabilities are in excess of assets, that evidence may be "sufficient to support the implicit finding of the Bankruptcy Court, [sitting as] trier of fact, that the unsecured creditors would receive less than 100% on their claims." *Precision Walls*, 196 B.R. at 303 (finding evidence sufficient where the trustee introduced, at trial, "a summary of schedules filed in the bankruptcy proceedings, demonstrating liabilities of $211,247.88 and assets of $181,051.10"); *see also Kiddco, Inc. v. Callaway*, Case No. 5:07-CV-262-F at 8 (E.D.N.C. March 16, 2010) ("Here, the affidavit of the trustee, relied upon by the bankruptcy court, was sufficient to establish that unsecured creditors would have received less than 100% of their claims in a hypothetical Chapter 7 liquidation."). Based on the foregoing uncontested evidence of the debtors' insolvency, the trustee contends, it is clear that American, as a general unsecured creditor, received more from the debtors' estates than it would have received had the cases originally been

filed under chapter 7. "If a bankruptcy estate is insolvent, a debtor's pre-petition payment to a general unsecured creditor enables that party to receive more than it would receive in bankruptcy." *In re J.A. Jones*, 361 B.R. 94, 99 (Bankr. W.D.N.C. 2007). The court agrees. The trustee has met his burden of establishing that American could not and would not have been paid in full in a hypothetical chapter 7 as an unsecured creditor.

American's response to this argument is that it could have been a secured creditor, if the debtors had failed to make the challenged payments, because it would have filed claims of lien as authorized in Chapter 44A of the North Carolina General Statutes. So, American reasons, its *ability* to file claims of lien, which would have secured its interest and precluded the avoidance action, should equate to secured creditor status in the § 547(b)(5) hypothetical. According to American, "almost all courts have held that, *if the creditor could have filed a lien and been paid in full*, the payment is not a preference because the debtor cannot satisfy the requirements of 11 U.S.C. § 547(b)(5)." American's Mem. in Opp'n to Pl.'s Cross-Mot. for Summ. J. at 3 (emphasis added). While saying "almost all" courts is a bit of a stretch, there is, in fact, a solid contingent of persuasive precedent in support of the notion that "payments made to the holder of an inchoate statutory lien during the preference period are not avoidable where, at the time of the payment, the lienholder: i) remained eligible to perfect the lien pursuant to relevant State law, and ii) such perfection would not otherwise have been avoidable under the Bankruptcy Code." *In re 360networks (USA), Inc.*, 327 B.R. 187, 193 (Bankr. S.D.N.Y. 2005); *see also In re ACP Ameri-Tech Acquisition, LLC*, 2012 WL 481582 (Bankr. E.D. Tex. 2012) (citing multiple supportive cases). The "inchoate lien" theory "recognizes that since a holder of inchoate lien rights cannot perfect a lien after accepting payment in satisfaction of the underlying claim, a refusal to protect such transfers from avoidance exposes

8

holders of such inchoate rights to 'an unreasonable Hobson's choice between accepting payment (with the attendant risk that it could be avoided if the payor enters bankruptcy) or taking the commercially unreasonable step of declining payment in order to perfect an inchoate statutory lien.'" *ACP Ameri-Tech Acquisition, LLC*, 2012 WL 481582 at *3 (quoting *360Networks (USA), Inc.*, 327 B.R. at 192).

The court agrees that the rationale behind this analysis has common sense appeal, and there is a certain symmetry in aligning a "hypothetical chapter 7" with a corresponding "hypothetical reasonable creditor." As the *Ameri-tech* court noted, this

> preference immunity has been recognized by a number of courts and, although the Fifth Circuit has not directly addressed the subject, it has endorsed its underlying premise that, in constructing the hypothetical Chapter 7 case mandated by § 547(b)(5), in which the transfers never took place, a court should presume that all parties will act in a commercially reasonable and businesslike manner to protect its own interests. In this context, that would mean acceptance of the premise that, in the absence of payment in the Chapter 7 hypothetical, the Defendant would have perfected its inchoate lien.

*Id.* at *3 (citing cases) (internal citation omitted).[5]

Taking this rationale several steps too far, American would establish a new layer of "hypothetical" guesswork by requiring the *trustee* to prove, as part of his main case, that the actual preference defendant *would not* have done something (filed a lien) that a hypothetical and reasonable

---

[5] The *Ameri-tech* court ultimately ruled against the creditor after explaining that while it "might be willing to accept such a legal theory, the Defendant ha[d] offered no summary judgment evidence that it was the holder of any inchoate lien rights." *Id*. Based on its conclusion that the analysis urged by American is precluded by controlling precedent, this court does not reach the question of whether, if the analysis were to be applied, American offered sufficient evidence to establish its entitlement to file the liens and achieve secured status as would have been required by the *Ameri-tech* court.

9

preference defendant *presumably would* have done. Additionally, American would require the trustee to go through that exercise with respect to every challenged payment from the debtor to American and to show, in each instance, whether the proceeds from sale would have been sufficient to satisfy every lien that was or could have been filed as to that particular property. There is no basis in the statute for this construction. In light of the Fourth Circuit's frosty reception in *United Rentals* of the preference defendant's efforts to establish what it could and would have done in the context of inchoate lien rights and a § 547(c) new value *defense*, this court finds it extremely unlikely that the appellate court would make the leap that American's argument requires.

American does maintain, correctly, that the bankruptcy and district courts in the Eastern District of North Carolina are somewhat isolated in their construction of the statute. However, those courts, and other courts within North Carolina that touch on the issue, all take their direction from North Carolina state law. In *Precision Walls*, decided in 1996, the district court for the Eastern District of North Carolina pointed out that "the parties have not cited, and this court has not found, any North Carolina case law authorizing extra-statutory methods of perfection." 196 B.R. at 303. The *Precision Walls* court emphasized that it was "not in a position to second guess the North Carolina legislature with respect to its enactment of a notice requirement for perfection. Therefore, this court will require a subcontractor to comply with the state statute in order to obtain the protections provided by the Bankruptcy Code to secured creditors." *Id*. The same remains true today.

Later cases in this circuit also are consistent with the *Precision Walls* court's interpretation of the interaction between § 547(b)(5) and Chapter 44A. While American contends that the Fourth Circuit Court of Appeals would, if given the opportunity, agree with American's interpretation of

10

the statute, the trustee argues to the contrary, and this court agrees with the trustee. In *United Rentals*, the appellate court affirmed the bankruptcy court's grant of partial summary judgment to the trustee over the preference defendant's argument that it would have received full payment from its surety, had the debtor not made the challenged transfers. The issue presently before this court was on the sidelines in *United Rentals* because it was raised for the first time on appeal and therefore not addressed. However, in the context of considering United's new value defense, the Fourth Circuit made these observations on the nature and significance of mechanics' liens in North Carolina:

> As we have explained, United claims that it held a security interest in the owners' properties at the time of the transfers because the mechanic's lien statutes immediately grant a security interest to a supplier who furnishes labor or material to improve the property. United bases this argument on the notion that a mechanic's lien, once filed, is retroactively effective to the time the material or labor were furnished. United's conclusion does not follow from its premise, however. North Carolina's mechanic's lien statutes grant a supplier of labor or material only *the right to file a mechanic's lien*, which United did not do here. See N.C. Gen. Stat. 44A-8 ("Any person who . . . furnishes rental equipment . . . shall, upon complying with the provisions of this Article, have *a right to file a claim of lien* on real property." (emphasis added)). Only upon the filing of a claim for a mechanic's lien is the owner's property encumbered. See N.C. Gen. Stat. 44A-10 ("*A claim of lien* on real property granted by this Article shall relate to and take effect from the time of the first furnishing of labor or materials at the site of the improvement by the person claiming the claim of lien on real property" (emphasis added)).

*United Rentals*, 592 F.3d at 533 (emphasis in original). Finally, the court concluded, "[b]ecause United had not filed such a claim when the transfers were made, no interest had been transferred to United and United had no such interest to release." *Id*. There was, in sum, no actual interest to perfect, through "extra-statutory" methods or otherwise. *See Precision Walls*, 196 B.R. at 303.

11

American makes the same argument to this court that United offered to the Fourth Circuit: It simply makes no sense, American insists, "from a policy standpoint," for a creditor positioned similarly to United or American to refuse payments and instead to file a mechanic's lien. *United Rentals.* at 534. Rather, as United argued then and American argues now, it should be incumbent on the trustee "to show that had the transfers not been made, [the preference defendant] would not have promptly filed lien claims and thereby attained secured-creditor status such that it could have obtained full payment in a hypothetical Chapter 7 bankruptcy." *Id.* Whether this argument was correct, the Fourth Circuit explained, would have to "wait for another case in which the issue is properly preserved." *United Rentals*, 592 F.3d at 534.

In this case, American has fully articulated the issue identified but left untouched in *United Rentals*, but it cannot carry the day. To the extent that the *United Rentals* court examined the nature of inchoate lien rights in the context of a § 547(c) defense, it did so with reference to the same North Carolina law that applies in this case, and it indicated quite clearly that Chapter 44A gives only the right to file a mechanic's lien. When the creditor does not exercise that right, the appellate court reasoned, "no interest had been transferred" and the creditor has "no such interest to release." *Id.* That holding, though in the context of § 547(c), is entirely consistent with the underpinnings of *Precision Walls*, which remains valid precedent. Accordingly, this court has no solid basis on which to conclude that American's assertion of its unexercised *right* to file a claim of lien should, in the context of § 547(b)(5), be viewed as tantamount to American's having done so. American's claim therefore is deemed to be unsecured for § 547(b) preference analysis purposes, and that, paired with the insolvency of the debtors, provides the trustee with a *prima facie* preference claim.

For the foregoing reasons, the motion for summary judgment filed by American, in which it also sought dismissal of the trustee's complaint, is **DENIED**, and the trustee's cross-motion for partial summary judgment is **ALLOWED** with respect to the trustee having established the *prima facie* elements of his preference claim under § 547(b).

**SO ORDERED.**

**END OF DOCUMENT**